IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 04-CV-00982-PSF-BNB

CINDY CROWLE,

    Plaintiff,

v.

GALE NORTON, SECRETARY OF THE DEPARTMENT OF THE INTERIOR,

    Defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on defendant's Motion for Summary Judgment, filed April 25, 2005 (Dkt. # 28). The plaintiff's response was filed May 16, 2005 (Dtk # 29), and the defendant filed a reply on June 3, 2005 (Dkt # 30). The matter has been scheduled for a five-day jury trial to commence on November 14, 2005.

In her Complaint (Dkt. #1) filed May 12, 2004, Plaintiff Cindy Crowle asserts two claims for relief: one for gender discrimination, including a hostile work environment and adverse employment actions, and the second for retaliation, including retaliatory treatment and retaliatory termination, both in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e.

Defendant Secretary of the Department of the Interior's Motion for Summary Judgment addresses both claims and asserts that the undisputed material facts do not establish a *prima facie* case of gender discrimination or retaliation, and that legitimate non-discriminatory reasons exist for the defendant's actions.

## I. FACTUAL BACKGROUND

The following facts, except where noted, are undisputed by the parties.

Plaintiff Cindy Crowle was employed by the Department of the Interior for approximately 23 years. Ms. Crowle asserts that she "was never subject of a single disciplinary action until nine days after she sought EEO counseling for [alleged] gender discrimination." Resp. at 2, 17. She was most recently employed as a law enforcement Park Ranger at Dinosaur National Monument ("DINO") from June 1999 until her termination on May 2, 2003. Answer, ¶ 7. At the time, DINO was divided into two sister districts: the Green River District and the Yampa District. Ms. Crowle was assigned as the Green River District Ranger, a GS-11 position, and reported to Chief Ranger David Panebaker. Answer, ¶ 8. In May 2000, Sam Martinsen was transferred to DINO as a GS-9 Law Enforcement Officer and placed under Crowle's supervision. Def.'s Mot. Summ. J., Ex. A-2 at 86:25-91:18. Soon thereafter, Martinsen and Crowle's relationship became strained. Def.'s Mot. Summ. J., Ex. A-1 at 39:4-46:19. In March 2001, Crowle and Martinsen attended conflict resolution counseling. Def.'s Mot. Summ. J., Ex. A-1 at 43:5-46:19. In approximately May 2001, Martinsen was removed from Crowle's supervision, Answer, ¶ 13, and moved to a park-wide position. Def.'s Mot. Summ. J., Ex. A-3 at 13:20-14:1.

In February 2001, three months prior to Martinsen's transfer out of DINO, Crowle requested a lateral transfer to the sister district, the Yampa District, to be a GS-11 District Ranger position. Panebaker denied the request. In June 2001, he instead detailed Martinsen, then in a park-wide position, to be acting Yampa District Ranger (a

temporary promotion) for approximately four months, until the position was abolished. Answer, ¶ 14.

Thereafter, the relationship between Cindy Crowle and her employer quickly deteriorated:

1)  On August 27, 2001, plaintiff sought EEO counseling for alleged gender discrimination based on the denied transfer request.  Panebaker received notice of the counseling and of her informal complaint on September 4, 2001.  Answer, ¶ 15; Pl.'s Resp. Ex. C.

2)  The next day, September 5, 2001, plaintiff received a written reprimand from Panebaker for allegedly hiring a seasonal employee against Panebaker's directive to the contrary; the alleged insubordination occurred four weeks prior.  Answer, ¶ 16; Def.'s Mot. Summ. J., Ex. A-7.

3)  On November 13, 2001, plaintiff prepared a practical joke "Special Bulletin" on National Park Service ("NPS") letterhead purporting to charge a local rancher excessive fees over the holiday weekend and containing references to anthrax.  Def.'s Mot. Summ. J., Ex. A-1 at 58:24-64:15 and Dep. Ex. A attached thereto.  The DINO Superintendent's Office counseled plaintiff regarding the incident on December 18, 2001, and issued a written reprimand which she received on January 30, 2002.  Def.'s Mot. Summ. J., Ex. A-8, Dep. Exs. 51 and 52 attached thereto.  The next day, January 31, 2005, Panebaker conducted an administrative review of the incident, eventually leading to plaintiff's seven-day suspension (from April 19, 2002 until April 26, 2002) for

allegedly failing to tell the complete truth about the use of government equipment in creating the "Bulletin."  Def.'s Mot. Summ. J. at 4-5.

4)  On November 15, 2001, plaintiff filed a formal complaint with the EEO, Department of the Interior, for a hostile work environment and discrimination based on gender and retaliation.  Def.'s Mot. Summ. J., Ex. A-1, Dep. Ex. C attached thereto.

5)  On March 14, 2002, during firearms qualification, plaintiff fired two rounds from her AR-15 assault rifle into the front bumper of a government vehicle, which was being used for cover.  A Board of Inquiry later determined that this was an accident.  Def.'s Mot. Summ. J., Ex. A-11, Dep. Ex. 4 at 4 attached thereto (also marked as p. 1071).

6)  On May 15, 2002, plaintiff publicly accused her supervisor, Panebaker, of misplacing remittence checks and lying about it.  A Board of Inquiry later determined that plaintiff falsified this allegation.  Def.'s Mot. Summ. J., Ex. A-1 at 95:24-102:8; Ex. A-11, Dep. Ex. 4 at 6 attached thereto (also marked as p. 1073).

7)  On June 27, 2002, Panebaker suspected plaintiff of secretly tape recording a scheduled meeting.  Def.'s Mot. Summ. J., Ex. A-6 at 74:23-81:7.  Plaintiff denied tape recording this particular meeting, but produced a tape recorder from her bag and admitted to previously tape recording Panebaker on numerous occasions (less than ten, more than one) without his knowledge.  Def.'s Mot. Summ. J., Ex. A-1 at 107:20-111:15.

4

8) On July 12, 2002, plaintiff took a government vehicle without permission after her duty hours, afterward explaining that she was searching for illegal campfires. Def.'s Mot. Summ. J., Ex. A-1, 114:17-115:18.

9) On July 22, 2002, plaintiff received a memorandum from the DINO Superintendent's Office temporarily suspending her Law Enforcement Commission and requesting that a Board of Inquiry be conducted to investigate plaintiff's ability to perform her duties. The memorandum listed numerous specific incidents about which the Superintendent was concerned. This temporary suspension was followed by the removal of two law enforcement staff members and certain related equipment from plaintiff's control. Def.'s Mot. Summ. J., Ex. A-9, Memo; Answer, ¶ 18.

10) A Board of Inquiry composed of three women and two men was convened on September 4-6, 2002, pursuant to NPS policy. The Board reviewed thirteen allegations of misconduct and recommended revocation of plaintiff's Law Enforcement Commission. Def.'s Mot. Summ. J., Ex. A-11, Dep. Ex. 4 at 7 attached thereto (also marked as p. 1079).

11) A few days prior to the Board of Inquiry, on August 31, 2002, plaintiff again contacted an EEO counselor alleging retaliation for prior EEO activity. Def.'s Mot. Summ. J., Ex. A-14 at 3. Although she received a Notice of Final Interview providing for fifteen days to file a formal complaint on October 25, 2002, her formal complaint alleging retaliatory discrimination and asserting seventeen separate allegations was actually filed several months later, in April 2003. Def.'s Mot. Summ. J., Ex. A-15. The Department of the Interior dismissed all claims for untimeliness. *Id.* Plaintiff, claiming

she mailed the formal complaint within the required time frame, appealed this decision to the EEOC Office of Federal Operations; her appeal was denied. Def.'s Mot. Summ. J., Ex. A-16.

12) By September 26, 2002, plaintiff's unfavorable Board of Inquiry results were reviewed by the Superintendent's Office. The Superintendent recommended permanent revocation of plaintiff's Law Enforcement Commission to the Regional Director. The Regional Director revoked plaintiff's commission on October 27, 2002. Def.'s Mot. Summ. J., Ex. A-5, Dep. Ex. 34 attached thereto. Plaintiff appealed this revocation to the NPS in Washington, D.C.; her appeal was denied. Def.'s Mot. Summ. J., Ex. A-12.

13) On March 27, 2003, DINO Superintendent Cartwright issued a memorandum to plaintiff proposing her removal from the NPS for failure to meet a condition of her employment–failure to possess a Law Enforcement Commission. Def.'s Mot. Summ. J., Ex. A-13.

14) On May 1, 2003, the Deputy Regional Director, Intermountain Region, upheld the proposed removal. Plaintiff's employment was terminated on May 2, 2003. Def.'s Mot. Summ. J., Ex. A-5, Dep. Ex. 42 attached thereto.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56© of the Federal Rules of Civil Procedure if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When applying this standard, the Court reviews the pleadings and the documentary evidence in the light most favorable to the nonmoving party. *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988). To defeat a properly supported motion for summary judgment of the defendant, "there must be evidence upon which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied*, 516 U.S. 1160 (1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In addition, "'where the non-moving party will bear the burden of proof at trial on a dispositive issue' that party must 'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 322).

### III.   CLAIM ONE: TITLE VII–GENDER DISCRIMINATION

#### A. Gender Discrimination Based on Hostile Work Environment

To demonstrate a claim for hostile work environment, a plaintiff must prove that (1) she is a member of a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on sex, and (4) the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment. *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 797 (10th Cir. 1997), *cert. denied*, 522 U.S. 935 (1997).

Ms. Crowle is female, satisfying element one.  For elements two and three, she presents statements by six witnesses who suggest that Crowle was subjected to alleged gender-based harassment or hostility (John Chartier, Janet Chartier, Andy Marchand, Harold Loiselle, John Larsen, and Wayne Stevens).  Pl.'s Resp., Exs. F, G, Q, R, CC, and LL.   Such statements include the following by Ranger Andy Marchand: "I believe Ranger Crowle has been subjected to nonstop harassment by Ranger Martinsen and Ranger Panebaker.  I have never experienced anything like this hostile work environment I witnessed in this park."  Pl.'s Resp., Ex. Q, ¶ 10.

While Ms. Crowle establishes a genuine issue as to whether she was subject to unwelcome harassment, she does not present sufficient evidence that the harassment was based on her gender.  She misreads the Supreme Court's decision in *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998), citing the case for the proposition that "[i]t is well established that a plaintiff need only show that she was treated *differently than a male employee* to establish that the discrimination was based on her sex."  Pl.'s Resp. at 11 (citing *Oncale*, 523 U.S. at 80-81) (emphasis in original).  Rather, the *Oncale* Court noted that in the context of a *same-sex* harassment claim, a "plaintiff may . . . offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace."  *Oncale*, 523 U.S. at 80-81.  Ms. Crowle still must meet her duty to "produce evidence that she was the object of harassment *because of her gender*."  *Chavez v. New Mexico*, 397 F.3d 826, 833 (10th Cir. 2005) (emphasis in original).  Although Ms. Crowle presents evidence of harassment, "Title VII is not a code of workplace conduct, nor was it designed to bring

about a magical transformation in the social mores of American workers . . . . Thus, a hostile environment claim requires a showing not only of severe and pervasive harassment, but of severe and pervasive harassment based on *gender*." *Id.* (emphasis added) (internal citations omitted).

Plaintiff's contentions that she was treated differently than her male subordinate, Sam Martinsen, are not, in the absence of "other, overtly gender-discriminatory conduct," sufficient to sustain a hostile work environment claim. *Id.* (requiring additional gender-discriminatory conduct in order to consider gender-neutral harassment for hostile environment claim). The affidavits she attaches to her Response do not provide evidence that the harassment Ms. Crowle suffered was based on gender. Describing Panebaker and Martinsen as "good old boys" and offering an unsworn opinion that Martinsen did not like taking direction from a female, *see* Pl.'s Resp. at 9, are not specific facts sufficient to defeat summary judgment. Additionally, the conclusory statement that "I believe that Ranger Cindy Crowle was discriminated against based upon her gender by Chief Ranger Dave Panebaker and Ranger Sam Martinsen," Pl.'s Resp., Ex. LL, in the absence of any specific evidence, does not create a genuine issue of fact.

Because Ms. Crowle cannot demonstrate a *prima facie* case of hostile work environment based on gender, the Court **GRANTS** defendant's motion for summary judgement for plaintiff's hostile work environment claim.

**B. Gender Discrimination Based on Disparate Treatment**

Plaintiff asserts disparate treatment on the basis of her denied transfer request to the Yampa District Ranger position and in the amount of overtime pay plaintiff received.

To establish a *prima facie* case of disparate treatment, plaintiff must present evidence that: (1) she is a member of a protected class, (2) she was subjected to an adverse employment action, and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See Hysten v. Burlington Northern and Sante Fe Ry.*, 296 F.3d 1177, 1181 (10th Cir. 2002).

Here, plaintiff is female, satisfying element one. As to element two, Defendant argues that each of the actions plaintiff asserts do not rise to the level of adverse employment actions.

The Tenth Circuit liberally defines adverse employment action. *See Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998). Adverse employment actions are "not simply limited to monetary losses in the form of wages or benefits" and will be determined on a "case-by-case" basis, examining the unique factors in each situation. *Id.* Following is a case-by-case analysis of facts presented for both of the claimed adverse employment actions.

### 1. Denied Transfer to the Yampa District Ranger Position

Plaintiff asserts that the denied transfer to the Yampa District Ranger position, even though a lateral move, rises to the level of an adverse employment action because the responsibilities were different and the Yampa District provided more opportunity for involvement in backcountry activities, wildlife related operations, and

river rafting patrols. Pl.'s Resp., Ex. I. Ms. Crowle also cites Panebaker's deposition testimony admitting the transfer "may" have been a good career development move for plaintiff. Pl.'s Resp., Ex. D at 104. Defendant does not deny plaintiff's claims regarding the increased opportunities at the Yampa District, but rather makes the conclusory claim that denial of the transfer was not an adverse employment action and asserts legitimate reasons for the denial. *See* Def.'s Mot. Summ. J. at 17, Def.'s Reply at 9. Thus, the Court accepts, for purposes of summary judgment, Plaintiff's argument that the action constitutes an adverse employment action.

For a disparate treatment claim, Ms. Crowle can rely on evidence that she was treated differently than "similarly situated employees" in order to meet element three of the *prima facie* case, circumstances giving rise to an inference of discrimination. *Hysten*, 296 F.3d at 1181-82. However, although Ms. Crowle offers evidence that Martinsen was treated differently, she does not offer evidence that he was similarly situated. Rather, the evidence shows that Martinsen and Crowle were quite dissimilarly situated, and thus Panebaker transferred Martinsen to the Yampa position. Specifically, Panebaker credibly demonstrates that Martinsen rather than Crowle was assigned as Acting Yampa District Ranger because it allowed Panebaker to keep the more junior individual (Martinsen) at the location (Yampa) nearest headquarters where Panebaker worked to provide assistance to the junior District Ranger. Def.'s Mot. Summ. J., Ex. A-3, 20:15-21:14; Ex. A-4, 103:9-25. Further, defendant plausibly asserts that plaintiff had experience running the Green River District and it did not make sense to transfer her away for merely a temporary assignment and that the

decision was made after discussion with the Superintendent's Office. Def.'s Mot. Summ. J., Ex. A-3, 20:15-21:14. As *Hysten* recognizes, "[a] plaintiff wishing to prove discriminatory animus with evidence that his employer treated him differently from other employees bears the burden of showing that the comparison is legally relevant–i.e., that the employees were similarly situated." *Hysten*, 296 F.3d at 1182. Plaintiff has failed in meeting her proof burden on this issue.

Ms. Crowle does not provide sufficient evidence that the transfer denial occurred under circumstances giving rise to an inference of gender discrimination. Therefore, the Court **GRANTS** defendant's motion for summary judgement for disparate treatment as to the denied transfer.

### 2. Denial of Premium (Overtime) Pay

Plaintiff similarly argues discrimination on the basis of being denied opportunities to earn overtime (premium) pay and that such a denial constitutes an adverse employment action. Specifically, plaintiff argues that, due to her gender, she was not allowed to work overtime, nights, Sundays or holidays, for which she would have earned premium pay. Pl.'s Resp. at 13. Plaintiff relies on *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998), to assert that denial of premium pay is an adverse employment action because it involves a change in benefits. Plaintiff contends that her premium pay went from over $8,000 in 2001 to less than $4,000 in 2002. Pl.'s Resp., Ex. H.

Defendant argues that denial of overtime pay is not an adverse employment action, and, further, even if it were, a legitimate reasons exists for denying plaintiff's

12

overtime requests: plaintiff was not given all the overtime (premium pay) she desired because she was a GS-11 supervisor and the overtime work could be performed by a lower paid (lower grade) individuals.  Def.'s Reply at 9.

Regardless, even if plaintiff could demonstrate that denial of overtime pay is an adverse employment action, she has presented no evidence that it occurred under circumstances giving rise to an inference of gender discrimination.  She notes that Martinsen's overtime pay increased by over fifty percent while hers decreased by the over fifty percent during the same time period.  Pl.'s Resp. at 14.  However, she fails to allege evidence that she and Martinsen were similarly situated or that the comparison is somehow legally relevant.  *See Hysten*, 296 F.3d at 1181-82 (requiring plaintiff to show that comparison with non-protected employee is "legally relevant–i.e., that the employees were similarly situated").  Martinsen was a GS-9 employee, who would be paid less than Crowle, a GS-11 employee, for overtime work.  *See* Def.'s Mot. Summ. J., Ex. A-2, 87:8-21; Pl.'s Resp. at 2.  While Ms. Crowle's significant reduction of overtime may well constitute probative evidence of discrimination by her supervisor in favor of Martinsen, Ms. Crowle does not provide sufficient admissible evidence that the discrimination was based on gender.  Therefore, the Court **GRANTS** defendant's motion for summary judgement for disparate treatment as to overtime pay.

**IV.    CLAIM TWO:  TITLE VII–RETALIATION**

To establish a *prima facie* case of retaliation, a plaintiff must present evidence that: (1) she engaged in protected activity, (2) she was subjected to an adverse employment action, and (3) there is a causal connection between the protected activity

and the adverse employment action.  *See Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004).

Ms. Crowle engaged in protected activity by contacting an EEO counselor on August 27, 2001 and August 31, 2002, and by filing a formal complaint of discrimination on November 15, 2001; thus, element one is satisfied.  She cites a pattern of "numerous disciplinary actions" culminating with her termination on May 2, 2003 in order to satisfy element two.  Pl.'s Resp. at 15.  The issue lies in element three: causal connection.

To resolve the issue of causal connection, both parties cite temporal proximity. Defendant argues that no causal connection is provable because there exists no temporal proximity between plaintiff's protected activity and plaintiff's termination, the termination having occurred nearly two years after the plaintiff first contacted an EEO counselor.  Def.'s Resp. at 14.  On the other hand, plaintiff argues that temporal proximity existed between the first EEO counselor session and the letter of reprimand plaintiff received for hiring a seasonal employee, the first in a long line of contentious actions between the plaintiff and defendant.

On September 5, 2001, plaintiff received a written reprimand for hiring a seasonal employee against the instructions of her supervisor, Chief Ranger Panebaker. Answer, ¶ 16.  The hiring in question occurred a month earlier, sometime around August 10, 2001.  Here, the written reprimand was apparently authored on September 5, 2001, by plaintiff's supervisor, Chief Ranger Panebaker.  Panebaker received notice of plaintiff's August 27, 2001 EEO counselor visit on September 4, 2001, *the day before*

*issuing the letter of reprimand.*  Answer, ¶ 15.   The plaintiff asserts that she was reprimanded in retaliation for engaging in protected EEO activity.  Complaint, ¶ 24. Defendant asserts that a legitimate reason for the reprimand exists–failure to follow orders.  Def.'s Mot. Summ. J. at 16.

The Tenth Circuit has recognized that protected conduct closely followed by adverse action may justify an inference of retaliatory motive.  *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996). The adverse action must be "very closely connected in time to the protected activity" in order for "mere temporal proximity" to establish a causal connection inference.  *See Miller v. Auto. Club of N.M.*, 420 F.3d 109, 1121 (10th Cir. 2005) and cases cited therein.  As recognized by the Tenth Circuit in *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004), a "six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation, but a three-month period, standing alone, is insufficient."

Here, the temporal proximity of Ms. Crowle's EEO activity and the letter of reprimand–a single day–does present a genuine issue of material fact as to whether the letter of reprimand was issued in retaliation for plaintiff seeking EEO counseling. *See also Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240 (10th Cir. 2004) (temporal proximity of EEO activity and adverse employment action sufficient to show causal connection for purposes of *prima facie* case).

Defendant presented no evidence that the letter of reprimand was prepared before September 5, or that any plans to reprimand plaintiff were in the works before defendant received notice of plaintiff's protected EEO activity.  A reasonable jury could

15

find that Panebaker issued the letter of reprimand in retaliation for plaintiff's participation in protected activities based on the timing alone.

Ms. Crowle challenges Defendant's proffered non-discriminatory reasons for the letter of reprimand, and also for the subsequent numerous disciplinary actions taken leading up to the Board of Inquiry recommendation. Pl.'s Resp. at 17-19. She asserts that the letter of reprimand was her first item of discipline in her 23-year career, Pl.'s Resp. at 2, an assertion supported by Superintendent Cartwright's statement that she had no disciplinary problems prior to coming to DINO. Ex. N at 169:9. Additionally, the "Special Bulletin" reprimands came within two months of the November 15, 2001 filing of plaintiff's formal complaint, arguably suggesting retaliatory motive under Tenth Circuit case law, *see Meiners*, 359 F.3d at 1231, especially in light of other evidence that the discipline may have been unwarranted. *See* Pl.'s Resp., Ex. L (indicating that the recipient of the Bulletin recognized it as part of a "running joke" and that it "was all in fun").

Twelve of the thirteen alleged incidents cited by the Board of Inquiry to support its recommendation for revocation of plaintiff's commission occurred *after* her initial EEO counselor contact on August 27, 2001 and the ensuing September 4, 2001 notice to her supervisor of this contact. Most of the subsequent adverse actions taken by the defendant occurred after plaintiff's November 15, 2001 filing with the EEO, Department of the Interior, beginning with the discipline for the "Special Bulletin" on December 18, 2001, which continued through April 2002. Ms. Crowle also contacted an EEO counselor on August 31, 2002, complaining of retaliation. This protected activity was

followed within a few weeks by an unfavorable decision by the Board of Inquiry, convened from September 4-6, 2002. The relatively sudden pattern of allegedly retaliatory conduct, beginning with the first letter of reprimand immediately following Ms. Crowle's initial EEO counselor contact, continued quickly, culminating with the Board's recommended revocation twelve months later in September 2002, and finally with her dismissal in March 2003.

In addition to emphasizing the timing of this pattern, Ms. Crowle attaches affidavits supporting her position that she suffered harassment and scrutiny to the point of termination. Pl.'s Resp., Exs. F, G, (claiming Martinsen was "engaging in a campaign to harass Ranger Crowle . . . and to force her out of Dinosaur"); Ex. Q (claiming "Ranger Crowle has been subjected to nonstop harassment by Ranger Martinsen and Ranger Panebaker" and such "surveillance" and "harassment started almost immediately after she filed her EEO complaint"); Ex. R; Ex. W (explaining ongoing "manipulation" by Ranger Martinsen and Ranger Panebaker regarding the reprimanding and disciplining of Ranger Crowle); and Ex. LL (stating that "Ranger Cindy Crowle was discriminated against based upon her gender by Chief Ranger Dave Panebaker and Ranger Sam Martinsen" and questioning Ms. Crowle's punishment on at least one occasion).

Ms. Crowle further argues that the Board of Inquiry, although itself a neutral decision maker, was "tainted" by the discriminatory animus of her supervisor and other employees. *Id.* at 19 (citing *Shager v. Upjohn Co.*, 913 F.2d 398, 404-05 (7th Cir. 1990) (reversing summary judgment where material factual issue existed as to whether

17

neutral board that terminated plaintiff was tainted by discriminatory animus of supervisor; known as the "cat's paw" doctrine).

Defendant contends that this rubber stamp or "cat's paw" doctrine does not apply "where plaintiff has the opportunity to present his/her side of the story, and to present evidence refuting allegations of misconduct." Def.'s Reply at 8 (citing Tenth Circuit case law). However, plaintiff asserts that "neither she nor her attorney were allowed to cross-examine any of the witnesses." Pl.'s Resp. at 6. Additionally, she cites deposition evidence showing that the Board refused to consider any evidence of discrimination or retaliation. *Id.* Therefore, a genuine issue exists as to whether the Board may have been tainted by the retaliatory motive of Ms. Crowle's supervisor, Panebaker, who recommended the suspension.

The famous aphorism "revenge is a dish best served cold," is first attributed to Pierre Ambroise François Choderlos de Laclos in his 1788 *Les Liaisons Dangereuses*. Its English wording has been credited to Dorothy Parker, and the phrase has more recently been recited in the movies "Star Trek II: The Wrath of Khan" (1982) and "Kill Bill, Volume I" (2003). Whether that is what occurred here in light of the Tenth Circuit's strict temporal proximity standards (absent other considerations) set forth in such cases as *Miller* and *Meiners*, *supra*, is less than clear. Nevertheless, this ongoing pattern of employment relationship problems in ostensible conjunction with plaintiff's August 2001 through April 2003 EEO contacts and complaints, together with the affidavits of persons who witnessed hostility toward and surveillance of Ms. Crowle, may justify an inference of retaliatory motive. Thus, a genuine issue of material fact exists as to whether

defendant's adverse employment actions leading up to and including plaintiff's termination were motivated by retaliation.  Therefore, this Court **DENIES** defendant's motion for summary judgement on plaintiff's claim of Title VII retaliation.

## V.     FAILURE TO TIMELY EXHAUST

Lastly, defendant asks that summary judgement be granted on all claims because plaintiff failed to timely exhaust her administrative remedies.  Although defendant admits that plaintiff's retaliatory termination claim is "properly before the court because it was part of her Merit System Protection Board case [which was] timely filed," Def.'s Reply at 11, defendant challenges her other "discrete claims of discrimination." *Id.* at 10.

As Ms. Crowle's second claim is the only surviving claim at this point, the Court will address defendant's exhaustion argument only as it relates to retaliation.  Because defendant admits that the termination claim was timely and is thus properly before the Court, the exhaustion argument fails.  Plaintiff Crowle may proceed with evidence that her termination was the result of ongoing retaliatory discrimination.

## VI.    CONCLUSION

For the foregoing reasons, this Court:

1. **GRANTS** defendant's motion for summary judgement (Dkt. #28) on plaintiff's hostile work environment claim;

2. **GRANTS** defendant's motion for summary judgement (Dkt. #28) on plaintiff's disparate treatment claim; and

6.  **DENIES** defendant's motion for summary judgement (Dkt. #28) on plaintiff's claim of Title VII retaliation.

DATED: October 31, 2005

BY THE COURT:

s/ Phillip S. Figa

_____
Phillip S. Figa
United States District Judge